UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER JOHN KNOX,

     Petitioner,

                             Civil No: 04-70580
                             HON. AVERN COHN

v.

PAUL RENICO,[1]

     Respondent.

_____/

## MEMORANDUM AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

     This is a habeas case under 28 U.S.C. §2254. Christopher John Knox

("Petitioner"), filed a pro se petition for writ of habeas corpus claiming that he is

incarcerated in violation of his constitutional rights, raising eight claims detailed below.

For the reasons that follow, the petition will be denied for lack of merit.

### II. Statement of Facts

     The material facts as gleaned from the record follow.

     Petitioner's conviction arises out of his on retrial[2] for the shooting death of Inkster

---

[1] The current warden is Blaine Lafler.

[2] After his first trial, a jury convicted Petitioner of first-degree murder, assault with intent to commit murder, and felony firearm. The Michigan Court of Appeals reversed Petitioner's convictions on the grounds that several prior witnesses statements were used improperly, and the trial court failed to explain to the jury the appropriate, limited use of the statements. See People v. Knox, 1998 WL 1989585 (Mich. Ct. App. No. 186235 (per curiam) (Oct. 17, 1998).

Police Officer, Kenneth Woodmore and the assault of auxiliary Officer Willie Hadley, Jr. According to the prosecution's theory, on June 17, 1994, at approximately 1:00 a.m., Petitioner was leaving a residence, that was known to be a crack house, on his bicycle. Petitioner was stopped by Office Woodmore, who got out of his vehicle and approached Petitioner.  Auxiliary Officer Willie Hadley, Jr. was following behind Officer Woodmore in his own vehicle.  Once Officer Woodmore got closer to Petitioner, Petitioner opened fire. Officer Woodmore was killed.  Petitioner saw auxiliary Officer Hadley, out of his vehicle and crouched down by his car door; and Petitioner began to shoot in his direction. Auxiliary Officer Hadley was not shot and was able to return fire.  Petitioner ran away from the scene.

Petitioner claims that he has an alibi for his whereabouts on the morning of the shooting and that he did not commit the shootings.  Petitioner asserts that he was within the neighborhood just south of where the shooting took place and was over a friend's home.  He states that he heard the shots from where he was located.  Petitioner later learned  that the police were looking for him.  After voluntarily going into the police station and then being permitted to leave, Petitioner was picked up the next day by the police.

### III.  Procedural History

On May 18, 2000, Petitioner was convicted in a jury trial of first degree premeditated murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony.  Petitioner was sentenced to a term of life imprisonment without parole for the murder conviction, a concurrent term of twenty-five to fifty years' imprisonment for the assault conviction, and a consecutive two-year term

2

2:04-cv-70580-AC-RSW   Doc # 49   Filed 03/29/07   Pg 3 of 19   Pg ID 3025

for the felony firearm conviction.  Petitioner filed a direct appeal presenting four claims: (1)  whether the trial court erred in permitting the prosecutor to introduce evidence that drugs were found in a yard near the scene of the shooting; (2) whether the trial court erred in admitting hearsay testimony for identification purposes; (3) whether Petitioner was denied due process when the prosecutor was allowed to present a rebuttal witness; and (4) whether a witness' testimony should have been stricken when her unofficial tape recorded testimony in the first trial was missing due to it either being lost, stolen or destroyed.  The Michigan Court of Appeals affirmed Petitioner's conviction.  People v. Knox, 2003 WL 21246650,  Mich. Ct. App. No. 231396 (per curiam) (May 29, 2003). The Michigan Supreme Court denied leave to appeal.  People v. Knox, 469 Mich. 970 (Mich. Nov. 24, 2003).

On February 18, 2004, Petitioner filed the instant petition, raising the same four claims set forth above in addition to the following four claims: (1) whether Petitioner was denied a fair trial when prior inconsistent statements were introduced into evidence; (2) whether Petitioner was denied effective assistance of counsel when unsound trial strategy led to the introduction of highly inflammatory and inadmissible evidence; (3) whether the prosecution failed to prove beyond a reasonable doubt that Officer Woodmore's killing was done with premeditation and deliberation; and (4) whether Petitioner was denied a fair trial when the prosecution repeatedly violated the trial court's discovery order.

## IV.  Standard of Review

Under 28 U.S.C. §2254(d), a petitioner is not entitled to relief in a federal habeas

corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"Clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 365; see also, Prince v. Vincent, 538 U.S. 634, 638-39 (2003). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable," as opposed to

4

transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable.  <u>Williams v. Taylor</u>, 529 U.S. at 411.

Therefore, the threshold inquiry in this case is whether the Petitioner seeks to apply a rule(s) of law that was clearly established at the time of his conviction in the state court.  See, <u>Id</u>. at 412.

## V.  <u>Analysis</u>

### A.  Claim 1 - Admission of Cocaine Evidence

Petitioner claims that the trial court erred in admitting evidence that the police found a pill bottle containing cocaine near the scene of the shooting and that the finding establishes Petitioner's motive for killing Officer Woodmore and for shooting at auxiliary Officer Hadley.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  See, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  <u>See</u> <u>Cooper v. Sowders,</u> 837 F.2d 284, 286 (6th Cir. 1988). "In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  <u>Barrett v. Acevedo,</u> 169 F.3d 1155, 1163 (8th Cir. 1999).

5

Here, Petitioner's argument against the admissibility of the cocaine evidence is two-fold.  First, he asserts that the pill bottle evidence was more prejudicial than probative as it was discovered in a high traffic area and could not be sufficiently linked to the Petitioner.  Second, evidence of Petitioner's possession of cocaine and his alleged attempt to discard it while absconding from the police is evidence of another crime or bad act which he asserts is not relevant to this matter.   To the extent that Petitioner challenges the substantive admissibility of the evidence, the claim is without merit.  A defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial.  Dowling v. United States, 493 U.S. 342, 353-54 (1990).  The cocaine evidence was deemed relevant because it provided a motive for why Petitioner would open fire upon Officer Woodmore when he approached the Petitioner.  "In a murder case, evidence of a defendant's motive is always relevant." People v. Knox, 2003 WL 21246650,  Mich. Ct. App. No. 231396 (per curiam) (May 29, 2003).  Because the challenged evidence was relevant to Petitioner's motive for the killing of Officer Woodmore and the assault of auxiliary Officer Hadley, a proper purpose under Mich. R. Evid. 404(b)(1), the probative value of the evidence was not substantially outweighed by the potential for unfair prejudice.  Accordingly, the Michigan Court of Appeals' conclusion was not contrary to or an unreasonable application of federal law. Petitioner is not entitled to relief on this ground.

## B.  Claim 2 - Admission of Hearsay Testimony

The disputed hearsay consisted of: (1) Deborah Armstrong's [Alonzo Dixon's mother] testimony that Dixon "telephoned her within an hour of the shootings and, in a

6

very excited manner, told her that he had observed the shootings and that defendant

was the shooter;" and (2) Sylvester Skinner's testimony that "after the shootings, Dixon

joined a group of people gathered in the area of the shootings and told several people

'he thought that was Chris . . . , it looked like Chris.'" (Tr. Vol. XI, pp. 21-22); (Tr. Vol.

VII, pg. 64).  Petitioner contends that, contrary to the prosecutor's arguments, the

alleged hearsay was not admissible under exceptions to the hearsay rule.

     The alleged violation of the State's hearsay rule is not a basis for habeas relief,

because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a

perceived error of state law."  Pulley v. Harris, 465 U.S. 37, 41 (1984).  "In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States.  Estelle v. McGuire, 502 U.S. at 68.

     The Michigan Court of Appeals concluded as follows:

> The testimony at trial indicated that both Armstrong's and Skinner's
> challenged testimony concerning Dixon's prior statements reflected
> Dixon's identifications of defendant after having observed him shoot
> Woodmore.  Dixon himself testified at trial, and defense counsel had an
> ample opportunity to cross examine him concerning his ability to observe
> the shootings and about the various inconsistencies between Dixon's
> testimony at the retrial and his prior testimony and statements to the police
> regarding the circumstances of the shootings and identity of the shooter.
> Accordingly, even though defense counsel chose not to question Dixon
> concerning the content of his statement to his mother and his statements
> of identification in Skinner's presence, Dixon was available for cross-
> examination regarding these statements. People v. Chavies, 234 Mich.
> App. 274, 283 n.4; 593 NW2d 655 (1999).

People v. Knox, 2003 WL 21246650,  Mich. Ct. App. No. 231396 (per curiam) (May 29,

2003).  This Court is bound by, and must defer to, the state court's interpretation of

state law.  Miskel v. Karnes, 397 F.3d 446, 453 (6th Cir. 2005).  Consequently, the

Court finds that the Michigan Court of Appeals' decision did not result in an objectively

unreasonable application of federal or U.S. Supreme Court law.  To the contrary, the

Michigan Court of Appeals applied the correct legal standard to the facts of Petitioner's

case as revealed at trial and reached a sound legal conclusion.  As such, Petitioner is

not entitled to habeas relief on the claim.

### C.  Claim 3 - Admission of Rebuttal Alibi Testimony

Petitioner's third habeas claim is based upon his contention that the trial

court permitted the prosecution to present the rebuttal alibi testimony of Felicia Harris

without providing the Petitioner with proper statutory notice.  Ernest Thomas was

Petitioner's alibi witness; and he testified that Petitioner was with him at his home at the

time of the shooting.[3]  Thomas further testified that he and the Petitioner went to a

nearby party store sometime prior to the shootings, saw Felicia Harris and her cousin

and made plans to go swimming later together.  Felicia Harris "testified that she had not

seen [Petitioner] or Thomas near the party store or elsewhere during the evening before

or morning of the shootings, and never made plans to go swimming with [Petitioner] or

Thomas."  People v. Knox, 2003 WL 21246650, at *3.

The Michigan Court of Appeals rejected Petitioner's rebuttal alibi claim as follows:

Alibi testimony is testimony which is offered in order to prove that the
defendant was somewhere else than at the scene of the crime when the

---

[3]Ernest Thomas testified at Petitioner's first trial.  He was not available for the re-trial.  Therefore, his testimony was presented to the jury without him being present. (Tr. Vol. XIV, pp. 10, 16)

8

crime occurred." People v. Gillman, 66 Mich.App 419, 424; 239 NW2d
396 (1976) . . . Harris' testimony did not contradict the actual alibi
testimony given by Thomas because Harris' testimony did not place
[Petitioner] at the scene of the crime or otherwise address [Petitioner's] or
Thomas' whereabouts at the time of the shootings. Gillman, supra at 424,
426-427. Accordingly, the trial court did not abuse its discretion in
admitting Harris' testimony, which constituted proper rebuttal
impeachment of the credibility of Thomas' testimony, not rebuttal of alibi
testimony subject to the notice requirement of M.C.L. § 768.20(2). People
v. Figgures, 451 Mich. 390, 398-399; 547 NW2d 673 (1996); People v.
Lyles, 148 Mich.App 583, 598; 385 NW2d 676 (1986).

Id.

The Court agrees with the Michigan Court of Appeals' conclusion. Petitioner's

rebuttal alibi claim lacks merit and the state courts' analysis relative to this issue

constituted a reasonable application of controlling federal constitutional law. Therefore,

habeas relief is denied regarding this claim.

### D.  Claim 4 - Confrontation Clause Claim

Petitioner's fourth habeas claim is based upon his claim that he was denied the

right to confront Ruth Friday who was a witness at both of his trials. During the course

of litigation of Petitioner's first trial, Friday provided a tape recorded, unofficial statement

to the police. It is Petitioner's position that the tape, although substantial portions of the

tape were admittedly inaudible, was evidence which helped his defense as it provided

some credibility to Petitioner's alibi claim.[4] However, Friday's live courtroom testimony

benefitted the prosecution. Although the tape was available for the first trial, it was

--------

[4]On the tape, Friday allegedly stated the following: (1) she never saw a second
police car; (2) Petitioner was some place else when the shooting took place; and (3) the
description of the bicycle she gave of what Petitioner was riding at the time of the
shooting differed from the bicycle of the individual who killed Officer Woodmore.

9

missing for the second trial.  The trial court deemed that the tape was missing due to the prosecution's negligent misplacement.

Petitioner claims that Friday should not have been permitted to testify at his second trial because her tape recorded testimony was not available for his counsel to use for impeachment purposes.  Therefore, Petitioner contends that his right to confront Friday was violated because he was precluded from effectively impeaching Ms. Friday during the second trial.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska 415 U.S. 308, 315 (1973).  Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Id., at 316.

However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish."  Fensterer, 474 U.S. at 20.  The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." California v. Green, 399 U.S. 149,166 (1970).  Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on

10

cross-examination." United States v. Cueto, 151 F.3d 620, 638 (7th Cir. 1998).

Petitioner cannot establish that he was denied his right to confront Friday for four (4) reasons. First, although the tape was missing, there was a transcription or outline of the tape that was completed during the course of the first trial. Petitioner's trial counsel had access to that and was able to use it during his cross-examination and impeachment of Friday during the second trial. Second, Petitioner's trial counsel had access to Friday's trial court testimony from the first trial. Therefore, that testimony was available for use in order to cross-examine Friday for purposes of testing her credibility. Third, Friday was available. Therefore, Petitioner's trial counsel had the opportunity to interview her prior to the commencement of the second trial. Finally, after reviewing the record, it appears that any significant issues or relevant areas of interest relative to Friday's testimony on the transcribed tape recording and during the first trial were sufficiently developed during the second trial.

For these reasons, this Court finds that the Michigan Court of Appeals' determination relative to Petitioner's Sixth Amendment Confrontation Clause violation was proper; and is consistent with federal law, constituting a reasonable application of that law.

The Court also agrees with the Michigan Court of Appeals' determination that Petitioner's due process rights were likewise not violated as a result of the missing tape. The Michigan Court of Appeals held as follows:

> With respect to defendant's due process argument, our review of Friday's testimony from each of defendant's trials and the unofficial transcript of her taped interview convinces us that any lost information on the tape of

> Friday's interview would not have *materially* affected the jury's
> determination of her credibility. No further facts potentially gleaned from
> the tape 'could reasonably be taken to put the whole case in such a
> different light as to undermine confidence in the verdict,' especially given
> the properly admitted identifications of defendant by Hadley and Dixon.
> Accordingly, we conclude that the loss of the tape did not deprive
> defendant of due process.

Id. (citations omitted).  Habeas relief is therefore denied relative to this issue.

## E.  Claims 5 through 8

### 1.  Exhaustion / Procedural Default

In Petitioner's first appeal of right, which resulted in a reversal by the Michigan Court of Appeals and a new trial, Petitioner raised the following (3) issues: (1) whether Petitioner was denied a fair trial when prior inconsistent statements were introduced into evidence; (2) whether the prosecution failed to prove beyond a reasonable doubt that Officer Woodmore's killing was done with premeditation and deliberation; and (3) whether Petitioner was denied a fair trial when the prosecution repeatedly violated the trial court's discovery order.  People v. Knox, 1998 WL 1989585,  Mich. Ct. App. No. 186235 (per curiam) (October 17, 1998).  Petitioner raises these claims, as well as a claim of ineffective assistance of counsel, in his petition.

Respondent argues that the Petitioner's remaining four claims are procedurally defaulted because he is raising them for the first time in his habeas petition.  However, Respondent does not discuss the issue of exhaustion and how Petitioner's failure to raise these issues in the state appellate courts first can result in the dismissal of this matter.  Respondent also fails to acknowledge that three of these claims were raised in

12

the Michigan Court of Appeals after Petitioner's first trial.  Therefore, Respondent's representation that these issues have only been raised for the first time in Petitioner's habeas petition is not accurate.

The issue of failing to exhaust state court remedies may be raised *sua sponte* when it appears that habeas claims have not been presented to the state courts.  Benoit v. Bock, 237 F.Supp.2d 804, 806 (E.D. Mich. 2003); 28 U.S.C. §2254(b)(3).

The exhaustion doctrine requires prisoners to pursue available state remedies before seeking a federal writ of habeas corpus. Baldwin v. Reese, 541 U.S. 27, 29 (2004). Prisoners must invoke "one complete round of the State's established appellate review process," including a petition for discretionary review in the state's supreme court "when that review is part of the ordinary appellate review procedure in the State."  O'Sullivan v. Boerckel, 526 U.S. 838, 845, 847 (1999).

Here, however, Petitioner does have a remedy because he never filed a motion for relief from judgment.  Therefore, he could return to the state appellate courts and present his unexhausted claims in a collateral post - judgment motion for relief from judgment.  Accordingly, the issue presented is not one of procedural default but rather one of exhaustion.  Federal courts may not grant a habeas corpus petition unless "the applicant has exhausted the remedies available in the courts of the State.  28 U.S.C. §2254(b)(1)(A).  Although normally the failure to exhaust state court remedies requires dismissal of the entire petition, Lyons v. Stovall, 188 F.3d 327, 333 (6th Cir. 1999)(citing Rose v. Lundy, 455 U.S. 509, 522 (1982), the failure to exhaust state remedies is not an absolute bar when the federal claims lack merit and don't require additional proceedings

13

which would waste time and judicial resources.  Id. at 333.  Accordingly, a court can excuse the exhaustion requirement in the interest of judicial economy and proceed to address the merits of a petitioner's claims.

As will be explained, because the four claims at issue are plainly without merit, the Court will address the substance of these claims.

### 2.  Claim 5 - Ineffective Assistance of Counsel

Petitioner maintains that his trial counsel was ineffective because his trial attorney failed to utilize a sound trial strategy which resulted in the jury hearing inflammatory and inadmissible evidence.  Petitioner generally argues that because his trial attorney failed to place an objection on the record regarding the admission of eyewitness testimony identifying Petitioner as the shooter and regarding the admission of evidence of his involvement in other criminal activity that his counsel provided ineffective representation.  Petitioner further argues that his attorney should have asked for a cautionary instruction relative to the introduction of the testimony.

To establish that his counsel was ineffective, Petitioner must prove that (1) "counsel's performance was deficient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." _Strickland v. Washington,_ 466 U.S. 668, 687  (1984). A strong presumption exists that counsel afforded the defendant reasonable professional assistance. _Id._ at 689.  To satisfy the second prong of the Strickland test, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

14

undermine confidence in the outcome." Id. at 694.  Therefore, "an ineffective assistance

of counsel claim cannot survive so long as the decisions of a defendant's trial counsel

were reasonable, even if mistaken." Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir.2002).

It is not the Court's responsibility to second guess the trial strategy of the

attorney, but to determine whether the Michigan Court of Appeals' decision was

consistent with the Strickland standard of review and whether the state appellate court

reasonably applied the federal law as it relates to ineffective assistance of counsel claim

in  this case. Lemon v. Wolfe, No. 04-71943, 2006 WL 305544 (E.D. Mich. Feb. 8,

2006).

Petitioner's blanket statements in support of his position are made without any

specificity relative to the particular eyewitnesses who testified or the specific testimony

to which he is referring.  Moreover, because the evidence in this case supports

Petitioner's convictions for first degree murder, assault with intent to commit murder,

and possession of a firearm during the commission of a felony[5], even without

considering the witness' prior statements as substantive evidence, counsel's failure to

request a limiting instruction did not render the result at trial unreliable or fundamentally

unfair so as to support  a finding of ineffective assistance of counsel.  Overall, Petitioner

---

[5]The trial court proceedings revealed: (1) eyewitness testimony from auxiliary
Officer Willie Hadley who testified that he was shot at by the Petitioner; (2) eyewitness
testimony from Alonzo Dixon who saw the shootings take place; (3) eyewitness
testimony from Ruth Friday about seeing the Petitioner using the bicycle which  Officer
Woodmore pulled over and stopped prior to the shooting; (4) testimony from Felicia
Harris which weakened Petitioner's alibi defense; (5) testimony about the cocaine
evidence found at the scene; (6) reliable and non-hearsay testimony from individuals
who were told about Petitioner's commission of the charged offenses, etc.

has failed to show that his trial attorney's performance was deficient and that the failure

of his trial counsel to object would have led to a different result.  Therefore, Petitioner

cannot meet the Strickland standard and is not entitled to habeas relief on this ground.

### 3.  Claim 6 - Prior Inconsistent Statements

Petitioner claims that prior inconsistent statements of three witnesses were

erroneously admitted into evidence.  However, Petitioner fails to articulate the nature of

these statements, fails to identify the three witnesses to which he is referring, and fails

to brief the issue with any facts or legal argument.  It is not position of this Court to

speculate about what arguments Petitioner is presenting for the Court to review.

Accordingly, the Court finds that Petitioner has abandoned his prior inconsistent

statement argument.  See Roberts v. Carr, 337 F.3d 609, 613 (6th Cir. 2003).

### 4.  Claim 7 - Sufficiency of Evidence

Petitioner claims that there was insufficient evidence of premeditation

 and deliberation to support his conviction for first degree murder.  The Court disagrees.

A habeas court reviews claims that the evidence at trial was sufficient for a conviction

by asking whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.  Scott v. Mitchell, 209 F.3d 854, 885 (6th Cir. 2000),

citing, Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Because a claim of insufficiency

of the evidence presents a mixed question of law and fact the court must determine

whether the state court's application of the Jackson standard was reasonable Dell v.

Straub, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002).

16

To prove first degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. Scott v. Elo, 302 F.3d 598, 602 (6th cir. 2002). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Johnson v. Hofbauer, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. Cyars v. Hofbauer, 383 F.3d 485, 491 (6th Cir. 2004).

Under Michigan law, the interval between the thought and action should be long enough to give a reasonable person sufficient time to subject his other actions to a "second look" in order to prove premeditation and deliberation. Aider v. Burt, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). There was sufficient evidence of premeditation and deliberation in this case, as noted by the court of appeals:

> The prosecution presented evidence that Woodmore, after pulling his car up to the bicyclist, walked around the back of his car and began walking up the passenger side of his car to the bicyclist before any shots were fired. Another witness saw [Petitioner] reach into his pants, presumably to pull out a gun, before Woodmore opened his car door.

People v. Knox, 1998 WL 1989585, Mich. Ct. App. No. 186235 (per curiam) (October 17, 1998). The Court concludes that the evidence presented at trial was sufficient for a rational trier of fact to conclude that Petitioner committed the offense of first degree premeditated murder. Because the Michigan Court of Appeals following Petitioner's first trial accurately summarized the facts in this case and made a reasoned decision, the

17

state court's decision was neither contrary to nor an unreasonable application of existing federal law . Welch v. Burke, 49 F. Supp. 2d 992, 1000 (E.D. Mich. 1999). Accordingly, Petitioner is not entitled to habeas relief on his insufficient evidence claim.

### 5.  Claim 8 - Discovery Order Violation

Petitioner vaguely argues that he was denied a fair trial when the prosecution violated the trial court's discovery order by failing to turn over certain video-tape and document evidence.  However, habeas relief is not warranted by violations of state discovery law so long as the defendant was not denied a fair trial.  United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988) ("[t]here is no general constitutional right to discovery in a criminal cases."), quoting, Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  The Michigan Court of Appeals held that "the trial court fashioned a reasonable remedy to the alleged violations of the discovery order, and we find no abuse of discretion."  People v. Knox, 1998 WL 1989585,  Mich. Ct. App. No. 186235 (per curiam) (October 17, 1998).  Moreover, Petitioner fails to articulate how the introduction of these discovery items deprived him of a fair trial.  Therefore, habeas relief is denied relative to this issue.

### VI.  Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on any of

18

his claims.  Accordingly, the petition is **DENIED**.  This case is **DISMISSED.**

     **SO ORDERED**.

                 s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2007

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Christopher Knox, 242927, Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623 on this date, March 29, 2007, by electronic and/or ordinary mail.

                 s/Julie Owens_____
Case Manager, (313) 234-5160